All right, we'll call the next case, Adler v. Frost, to head out. Take a shot going to an ad on that one. Okay, Mr. Koch. May it please the Court. Good morning, Your Honors. My name is Josh Koch, and I represent the appellant in this case, David Adler, the court-appointing dispersant agent for Gulf States LTAC of Covington, the debtor, reorganized debtor in this case. The primary issue before the Court today is whether or not the debtor's plan sufficiently common-law claims against the defendant appellees, non-creditors, to the case. Appellees respectfully submit that the claims against non-creditors, such as the appellee defendants, do not need to be specifically and unequivocally retained in the plan of reorganization in order to retain the claims post-confirmation. Specifically, the appellant in this case seeks to make a distinction, and believes the distinction is a very real distinction, between creditors and non-creditors. As the Court is aware, the present Fifth Circuit law does not make any distinction and simply says that any claims to be reserved must be reserved specifically and unequivocally. Let me ask you on this language here, you seem to have silently conceded that the language itself, without the distinction you want us to adopt, would be sufficient. Is that a fair statement? That is correct, Your Honor. You may be thinking just exactly what I asked, but as you cautiously say yes. Let me ask you about this language. What was it intended to say when it talks about claims asserted by the debtor prior to the effective date? Is that claims asserted by the debtor in some fashion in the bankruptcy, or claims before the bankruptcy had even begun? Your Honor, I didn't draft the plan. I was not counsel for the debtor at that time, so I would have to, I guess, speculate as to what it means. To me . . . You seem to be focusing on some sort of magic phrase, any and all claims, and we know from United Operating that must be fatally defective, but it does seem to me since United Operating there's been some effort by the Fifth Circuit to rein that back in somewhat, and if you define a category of claims that is identifiable in some fashion, the issue would seem to be whether you have to actually name the defendants in some part of the bankruptcy documentation or not, so I was just trying to figure out what category is this that this plan was talking about. Your Honor, I assume that it referred to the claims that were set forth in a derivative action, in a derivative lawsuit, that was filed approximately one month prior to the bankruptcy. Well, that claim is known and has been discussed in this case, so you think that's what that's talking about? I do, sir. That case was pending, that case was pending throughout the bankruptcy, and that case was pending post-confirmation. In fact, the defendants, the appellees in this case, represented all of the defendants in that case. How do we know that's what the language refers to? Well, Your Honor, we don't, and I can't tell you positively that that's what the language referred to. I would assume that the language intended to pull in any claims that the debtor might have had as of the effective date of the plan. Did you argue for this expansion of the basic doctrine of notice into the district court? Yes, sir, we did. We raised in several places, several times in our memorandum in opposition to the motion to dismiss, a reference to the fact that there was a distinction between creditors and the defendant. You rest on the note that the distinction between voting and non-voting. It seems to me that what you argue for doesn't make a lot of sense to me, frankly. I can't imagine why there would be this large, of course, people who are voting have an interest, but so do all other creditors. Well, in this instance, I would assume that in this particular plan, all the creditors had a right to vote on the plan, on confirmation. It may be, but that's not the rule you're arguing for. The effect of your rule is to change dramatically the basic structure that Jones's opinion originally put into place. I guess maybe the way to look at it is to look at it from the standpoint of the basis, as I understand, the requirement by the Fifth Circuit for a specific and unequivocal language. In all the cases out of the Fifth Circuit— If you don't make it clear, it's over. That's the basic idea. If you don't make it clear that you've got a claim, you're holding back a claim or whatever, then it's going to be over, right? But if we look behind it, what is the reason? That's the basic principle that we have in place now. Yes, sir. I understand that. And you want to change that. Yes, sir. You want to not make it—to bring a level of uncertainty in that something may arise later in some place. Well, I guess what I'm—our position, the appellate's position, Your Honor, is that the reservation, the specific and unequivocal reservation, the purpose behind that reservation, as set forth by the Fifth Circuit, is to give notice to creditors. So one— And to bring—and as Judge Jones, I think, explained quite well, and to bring—the overarching purpose is to bring finality to this and allow the person to discharge and depart. Yes, sir, and I would respectfully submit that a general reservation, such as—let me just focus for a moment on the general reservation language, I believe achieves the same end as enunciated by the judge. For instance, what is the difference between saying, all right, I reserve preference claims— Suppose you have a general reservation, which means you have no closure. Well, I think you do. You have the same—if the debtor has the right to bring claims, whether they are enunciated in the plan as common law claims or common law claims for fraud, there's nothing that says that the plan has to identify who those claims are against or the basis for those claims. They're just a general enunciation of claims. How, in terms of bringing the case to an end, does it matter whether we say any and all claims as of the effect that the debtor may have been able to bring as of the effective date of the plan or if the plan identifies these generic list or category of types of claims? I respectfully submit, Your Honor, that there's no difference in terms of when that case is going to end. It is not going to bring it to an end or closure any faster. What it is going to do, in the case of noncreditors, it is going to allow the creditors the benefit of those other claims. Because right now what we're doing is we're saying, creditors, we are not going to allow you to pursue these claims against noncreditors, even though the noncreditors had no right of notice. They had no right to participate in the plan. They had no right to the two elements of notice that the court discusses in all of its decisions. That is, notice whether or not they are going to be sued, they, the creditors, because they want to know that before they vote on the plan. And two, what's going to happen to the recoveries from these lawsuits should they go forward? Let me ask you this. Yes, sir. What do you say to counsel's argument that the creditors ought to have a voice in whether a suit is filed even against a noncreditor? They ought to have a voice in looking at whether that claim has any validity and is there going to be any net recovery? Are we putting good money after we've just thrown away money to pursue this claim? The creditors ought to have a voice in that also. Yes, sir. I think that's a good question. At present, it seems to be sufficient if we were to state that we are reserving claims for, reserving common law claims, including claims for fraud, legal malpractice, et cetera. Now, does that raise a different level of inquiry in the creditors if they see that particular notice as opposed to a reservation of any and all other claims that the debtor may have had as of the effective date of the plan? Now, I submit that it doesn't. In both instances, you are giving notice to the creditors that there are claims that the debtor may bring. And that was creditors. Under our law, since United operating, that's sufficient now to say we reserve our right for all common law claims? I believe that the court would find, and the Fifth Circuit hasn't ruled specifically on common law, but I think it has to say common law claims including and identify the types of claims. Go back to 1123B3. The language of the statute itself, it says in precise language that a reorganized debtor, after the plan is confirmed, may bring a claim or interest belonging to the debtor, but only to the extent to which the plan provides for attention and enforcement. And it says of any such claim or interest. Now, that's speaking with specificity. And I don't think that a generic qualification of any common law claims or whatever would form to that statute. I mean, before we get to our judicial gloss on that, I'm going back to the statute. I mean, help me with that. I understand where you're arguing, but I have real trouble with it on that distinction. I understand why you want to in this particular case that you fall in that slot. It's just, Your Honor, we're just taking a baby step here. That's the usual argument, and I respect that as an advocate, but I'd have a hard time conforming to the statute here. The 1123B, as I recall, Your Honor, is very ambiguous in exactly what language must be used to obtain a claim. Any such claim or interest is pretty clear for Congress. As I understand it, the history of 1123B and its predecessor statute was the purpose of those statutes was to enhance, was to increase the ability of creditors to recover and to pursue adversary actions post-confirmation. I mean, that seems to be the one seems to dispute that that is, in fact, the history and the intent of the statute. The case law seems to be pretty unanimous in concluding that the language or observing that the language that is required or that is sufficient to reserve those causes of action is ambiguous, is not as clear, perhaps, as it needs to be. Well, let's accept for a moment your assertion that it's ambiguous. And United Operating comes right back and would seem to have resolved any of that uncertainty. It said it must be specific and unequivocal. That language, if anything, is tighter. Yes, sir, but in each of the cases referred to and relied on by the Court in United Operating, it dealt with claims against creditors, just as the Fifth Circuit has. The cases all addressed by the Fifth Circuit of all involved claims against creditors. And again, that's where we kind of back up and we make this distinction or attempt to make the distinction between claims against creditors and claims against third-party strangers to the plan. I mean, a bankruptcy plan is a contract between the creditors and the debtor. Strangers to that plan have no right to object to any ambiguity in the plan. The only parties that have the right to object are the creditors and the debtor. Let's say we accept the distinction that you want us to make. What is the language in the plan that would call attention to this claim at all? The language in the plan currently? Yes. The language would be the reference in the plan, the reservation in the plan of any and all causes of action that the debtor may have been able to bring as of the effective date of the plan, number one. Number two, the fact that in the releases— Well, let me say, make sure we're talking about the same language. 60402 says any and all other claims and causes of action which may have been asserted by the debtor prior to the effective date. Is that what you're talking about? Yes, sir. Well, that wouldn't cover this. In conjunction with the fact that there is a reference to the derivative lawsuit in the definition section of the plan. And if we look at the release language of the plan, the release language of the plan releases the derivative claims, the claims that are in the derivative suit against the co-manager of the debtor who, in fact, is represented by the appellees in this case or was represented during the course of the bankruptcy. So we have reference to the derivative suit. We have a reservation of any and all claims that existed as of the effective date of the plan. Not existed, been asserted. Asserted, yes, sir. Excuse me, Your Honor. Asserted. We weren't trying to misstate it, but I think that's important. Haven't we backed off the absolute united operating language to the extent we've said you can look at other language in the bankruptcy proceeding to determine the intent of the language? My belief is that it was sufficient. Have we had a case like that? I thought I remembered a case like that. There is a in-rate commercial loan, which was a district court case, was similar, Your Honor. In that case, the court found that the claims were sufficiently reserved. Okay. Thank you, Mr. Cook. Thank you. Mr. Kupferman. Yes, Your Honor. Thank you. Good morning, y'all. As you know, Mr. Adler's central argument on appeals of the reservation of claims against non-creditors does not have to have the specificity required of claims. That's the general law in the other circuits, isn't it? In some circuits, not in the Fifth Circuit. I know, but, I mean, isn't that the general rule out there? I don't know that you can draw a general rule, Your Honor, but I believe that is the law in other circuits. In fact, in some of the other circuits, in fact, in some of the cases, the one that was just cited, to Your Honor, is the in-rate commercial loan. There is a recitation, at least, of that bankruptcy court of looking at some of the cases there. But what I wanted to start with is this issue was not raised in the court below. Now, we all know that an argument not raised below is not going to be considered on appeal, and we also know that the standard for that, as Mr. Adler quotes in his own brief, is that the argument has to be raised to such a degree that the district court has an opportunity to rule on it. And here, the trial court did not have an opportunity to rule on this issue. It did rule that Adler had failed to establish specificity, but it was never presented with this distinction between creditor or non-creditor, and it was never permitted to rule on that. But he did make the general argument, didn't he, that the reservation was adequate to preserve the claim? He did make that argument, Your Honor. He made that general argument. But I still do not believe that. I mean, that would be like saying, because this came up on a motion to dismiss, it would be like saying he opposed the motion to dismiss. Therefore, anything he comes up with now will satisfy that because he opposed it. And I don't believe that's the standard. The court, what the issue here is he now concedes, I believe, as Judge Southwick pointed out, he now concedes that there was not specificity if we stick to the rule of united operating. Well, let me ask you about the rule of united operating. We have in Texas, Wyoming, an effort to explain united operating, and it sort of draws on some of what Judge Higginbotham was saying. It was a pure look at the actual statute, but I'm not sure that's where we are. In Texas, Wyoming, we cited NRA united operating, said it cited with approval NRA ice cream liquidation. Shame we don't get cases like that. For the proposition that the plan's categorical reservation of preference claims was sufficient. There was some discussion there whether you would have to identify some actual defendants or not. But it does seem to me the actual language is specific and unequivocal, has been chipped away at a fair amount since then, but not in the nature that you're talking about, that opposing counsel is talking about of creditor versus non-creditor kinds of claims. But what would you say the rule of united operating is as presently understood? Judge Davis asked, is it an unusual rule compared to other states, other circuits? What is our rule as you understand it? What has to be stated in the plan or in some disbursement document or otherwise? I think the plan or the disclosure document has got to state specifically and unequivocally. You can divide this into two issues, if you will, which has come up repeatedly I think in the cases. One is the issue of the statement of the cause of action, a specification of the cause of action. Like a preference claim. Yes. I don't think you can just say I'm reserving any and all claims. That's exactly what united operating struck down. You can't say that. You have to specify. That's not what this plan says either. This plan says any and all claims asserted by the debtor prior. So I will say there's more in this than just that very general language. Well, of course. It may not be enough, but there is more. Certainly here it was not asserted prior to the bankruptcy. But I think going back to your original question, Your Honor, what you're talking about are two major issues that come out of united operating. One is the cause of action, which I think clearly has to be delineated. The second one is still up in the air, and that's the question of the identity of the target defendant, for lack of a better term. I think in the Texas-Wyoming case, Your Honors, the court never really had to reach that second issue because they are even, I believe it was in that case, it was a shareholder case, and those individuals were listed or certainly identifiable. I think they were actually listed. I think they were actually listed. You're always going to have that element of uncertainty with regard to specific identity. As long as you give the cause of action, you may not be able to target at that point juncture, no, the identity of all the ultimate defendants. When you get into securities litigation, we have many parties, whatever. So the reservation, it makes perfect sense to me that you would have that. You wouldn't have the same insistence on specific identity of each of the defendants. So, in other words, the nature of the claim itself may point to a group of persons, and you may not have all their names, but it's almost like a John Doe. And that may be, Your Honor, I don't think you need to address the issue of the identity in this case because it's clear he hasn't satisfied the specific cause of action. He hasn't listed them. The only thing that's specifically listed, if I recall correctly, is the avoidance action, and that's not what's being brought here, the avoidance of preference action. That's not what's being brought here. Therefore, he falls under the any and all claims, which I think under United Operating clearly is not sufficient. I thought opposing counsel had indicated there was some mention of this claim in some other papers in the bankruptcy proceeding. Is that not right? That is incorrect, Your Honor. What was mentioned in a definitional section in the, I think it was a disclosure document, was the derivative suit, which is not this suit. And he's just saying that my clients represented the defendants in the derivative suit. But the derivative suit, what he's talking about, is simply in a definitional section, and it doesn't apply to the reservation of the claims. This claim is related to the derivative suit, is it not? I don't believe it's really related to that. It doesn't arise out of that. This is a separately filed action, and quite frankly, Your Honor, I was not involved in the derivative claim. But I don't believe that to be the case. None of my clients were defendants in that case. And certainly I don't think he ends up satisfying the statements that are required under United Operating. What is this claim? Basically a malpractice claim for the way your client handled the debtor's case, derivative case? It's a combination. He's alleged breach of fiduciary duty, legal malpractice, and I think probably negligence to leave that issue. Did it arose out of this law firm handling the debtor's derivative case? That gets tied in somewhat, but I believe it also largely goes to events that occurred prior to the bankruptcy in terms of funds being shifted. There are an entire series of corporations and individuals that are involved. And some money, loans were taken, the allegation is for one entity, and the funds were given to a different entity, and somehow my clients are alleged to have been involved in that. All the more reason why it would seem to me that you would identify with specificity here what the claims are. It baffles me. A creditor would certainly have every interest in wanting to know what claims you've got against non-creditors. That may be a pot of gold out there, and they're selling off on something. Well, and I agree. I think that's one of the reasons. There's been one here, too, for all I know, but I'm not suggesting. But that's why we have this principle. No, and I agree with you. And I don't think there's any reason underlying the public policy that underlies United operating in the rulings of this court to make the distinction between creditor and non-creditor, which is what's happening here. Well, a creditor would certainly have a greater interest in voting on, say, voting against, a suit against one of the creditors than he would against a non-creditor. I mean, if a suit is against a non-creditor, you would think nine times out of ten that's just going to benefit the unsecured creditor. It's going to be more money brought into the estate. Well, that may or may not be, but that's something that the creditor has the right to know, because otherwise he can't cast an intelligible vote on whether to approve the plan or not. And it doesn't matter to the creditor. I mean, the interesting thing is we just talked about the issue of identity of individual and the issue of cause of action being identified. Clearly the cause of action needs to be identified. We're not so sure about the identity, but that's exactly what this argument depends on. It's the identity, the one area that this court really has not spoken clearly about in terms of disclosure. But think about this, going back to the public policy behind it. The reasoning is that the creditor has to have enough information to make an intelligent decision on his vote. I don't think, clearly if a cause of action is not specified, and we don't really know, all we know is Mr. Adler claims that the specificity requirement doesn't apply to non-creditors. I'm not quite sure what he says does apply. He doesn't really state a standard. I don't know if he's saying that means we don't have to say anything because there's no specificity, or we still have to do a cause of action but not the identification. It's not clear. You're on a very slippery slope. But what we do know is that a creditor, if he doesn't have, say, a cause of action that is specified, is going to lack sufficient information to know whether there is going to be a benefit to the debtor. Why would we think a creditor would object to money coming into the estate to pay unsecured creditors from a collection of a suit? Well, first of all, some creditors might object if it involved them. Second of all, if it involves them, and that could be whether they're a third party, they have to make an assessment for their own basis because even if the suit is not directed against them, they can make an assessment as to whether they will be brought into the litigation perhaps as a third party someplace down the line. But it's not to me, Your Honor, as clear as it's just money coming in. The estate has got to spend money to get that money. There's a big difference. Isn't there machinery for a creditor's committee to go to the bankruptcy judge and say, look, you need to rein in this guy who's going out there filing suits? I mean, that would be open to them, wouldn't it? Your Honor, I must confess I'm not a bankruptcy lawyer. But I do not believe even if the court can rein it in, once it's started, you've given permission to go forward with it. Now it's a question of the fine edges on it. Part of the problem here is you don't know what the cause of action is or who's intended. There's a big difference to an estate as to whether you're talking about prosecuting a debtor, as to whether you're talking about prosecuting a fender bender or prosecuting an antitrust case or a securities fraud case. One can cost a very little amount with perhaps a decent award in comparison. The other one, you may never recover and you could spend all the assets of the debtor in trying to prosecute that. But, I mean, if the creditor's committee has a procedural vehicle, if they see abuse going on, they can go to the bankruptcy judge and stop it. Why doesn't that solve the problem? Well, I think you've already kind of let the horse out the barn or whatever you'd like to call it. I think the problem is at that point you have started a case, you are involved, and the idea behind the specificity is up front, not after the fact. Creditors have the right to vote on the plan, and they have to have enough information to make that determination before you launch into this suit. Of course, the lawyer who files a suit has to come back and get his fees approved by the bankruptcy judge, doesn't he? Yes. So, I mean, he wouldn't have much of an incentive to go out there and abuse his right to sue somebody. I mean, to file a frivolous suit that he couldn't recover anything on and then come back and try to get a fee for it. I would hope none of us attempt to knowingly go into filing a frivolous suit, but sometimes the facts turn out that way and you've spent the money, or you don't always have control. We all know once you go into a suit, this is not a one-sided proposition. But you've got to balance that, don't you, against the right of the unsecured creditors to have additional money brought in by a legitimate claim. Yes, I think you would have to balance that right, but I think this Court has generally balanced the right and said you need the specificity. Well, most circuits haven't, as I read the cases. That may well be, but we're not in most circuits. We're in this circuit right now, and I personally think— That's what we're talking about. And I personally think this decision is correct. And what we're really talking about here is not the United Operating Standard, but whether you're now going to chip away at that and parse that out into creditor versus non-creditor. Let me also just mention, because I want to get back to my public policy issues, because I don't think that you end up with a creditor having sufficient information, but—to cast the intelligent vote. But there's also—I think that adopting the argument would create an additional burden on creditors. For example, if no specificity is required where you're going against a non-creditor, a creditor reviewing the plan to assess the viability of a post-confirmation debtor wouldn't know whether or what claims are being released and which are being reserved because they wouldn't have any intended defendant identified. They wouldn't know if any reservation was sufficient because they wouldn't even know if this unidentified intended target defendant was a creditor or a non-creditor because you're not having necessarily to specify the identity of the target defendant. What that does is the creditor doesn't even know what standard now applies. Is this an application where it requires specificity or an application where it requires no specificity because it's against a non-creditor? But the court hasn't said you need to identify who the intended target is. And even if the debtor gives you the name of the intended target defendant, which, of course, they failed to do here, the burden of determining which standard gets shifted now from the debtor, which otherwise has that obligation of disclosure, to the creditor himself, who now has got to sift through what could be hundreds of pages of schedules of creditors to go ahead and conclude whether the name target is a creditor or a non-creditor and exactly what standard applies. I think that the position taken by the appellants here increases the burden and confusion that would end up on the plate of the creditors. And the idea behind this is to make this speedy and efficient and to give all information that is necessary out to the creditors so they can make a reasonable and intelligent determination. Well, the policy also is to maximize, as bankruptcy judges are doing all the time, the size of the debtors. The State, with United operating and whatever amendments to the general rule you might say have already been adopted by other opinions, what would have been a way for this claim to be preserved in the plan? They could easily have specified it. If they were unaware of this plan, which I think was the case, factually were they aware of the alleged malpractice and the robbing of the estate of $5 million, I think is part of the claim, through preference actions or something else? How could this claim have been reserved in some sort of generic way to allow for that possibility? This is a substantial amount of money that for purposes here we can accept is in fact a potential claim, whether it would have been successful or not. Is there no way to reserve a claim like this that is yet undiscovered? First of all, I must confess I don't know whether this was discovered or not, and our discovery in our case didn't get that far to know. But going by that assumption, what I can say is I think that they easily, particularly if they thought that that might have been covered, they could have specified, we're going to reserve breach of fiduciary duty claims, we're going to reserve malpractice claims. They could have given a litany. Now whether that in and of itself without the identification of the target defendant would have been sufficient under United operating, I don't know. That's a decision for your honors. But right here there was nothing but the any and all. Counsel, I'm sorry, but the plan did reserve, quote, any and all other claims and causes of actions which may have been asserted by the debtor prior to the effective date. That's plainly in the teeth of United, and it's plainly not valid. So what we're left with then is that one of the things that troubles me is that, well, it's just for this case, what standard are we going to apply for this? And where are we going with this? And we say, well, just for this case? You mean any claims that have not yet been found? There's no closure. Yes, you don't know. United operating says specificity, and you've got to, we know, at least set out the causes of action. I see no reason to differentiate that or chip away simply based on whether the defendant himself, the target defendant, is a creditor or non-creditor. And in fact, your honor, that was my earlier point that I at least was trying to get across. United operating is a clear standard that gives everybody notice as to what has to happen. Under this, we don't know what the standard is. Okay, thank you, Mr. Governor. Thank you. Okay, Mr. Cook, back to you. How would you formulate, if you're writing this, the way you want it written, what would you say? I would say that a general reservation in a plan of bankruptcy is sufficient to retain a cause, a right of action, cause of action or claim against a non-creditor, provided that the plan clearly sets forth how the recovery from those causes of action or claims will be distributed. If we look back at the reasons articulated for the specific and unequivocal language, it is, one, so that the creditors know whether they are a potential target, so it doesn't matter if it's a non-creditor because then it doesn't apply, and two, what is going to happen with any recovery from those causes of action. That's what all the cases say. Those are the two reasons that the specific and equivocal reservation is necessary to give proper notice to the creditors. How do we square that? Can this panel? I read that as a change in United, quite clearly, because United has been criticized, I'm aware, by some bankruptcy courts, some like it, some don't, but this panel can't rewrite United. United really, I think, is being read for more than it was intended to do, and I say that because in United the reservation was of any and all causes of action or any and all claims under the code, under the bankruptcy code. Pre-confirmation. And what was the reservation here? The reservation here was any and all causes of action. Going back to, I understand that, Your Honor, but in that case you had a creditor that had settled pre-confirmation all of the debtor's Chapter 5 claims against him. So the creditor had every reason to believe that whatever claims the debtor may have were settled and resolved. There was no reservation. There was no any and all other claims. There was nothing. Once you got past the any and all claims arising under Chapter 5 of the bankruptcy code, there was no other specific reservation of any and all other claims or causes of action. And those claims had been settled. Thus, you had a plan and disclosure statement in United Operating that had no reservation. It didn't have any and all other causes of action. Now, what does the reservation you added, all claims previously asserted, what did that add to your reservation here? The general reservation that I suggested? Yes. I would allow a general reservation. General reservation is sufficient to reserve claims against non-creditors because they're not voting on the plan. They're strangers to the plan. Okay. Provided that the plan clearly sets forth how any recovery. With the reservation in this plan, I thought it said reserved any and all claims that have been previously asserted. That may have been asserted by the debtor. It could have been asserted. Is that what you mean? It could have been asserted. It says may, and I have the same question, Judge Davis. Are you saying this means they don't necessarily have to have been asserted, they just have to have existed prior to the effective date and could have been asserted? I read it to mean that any claims or causes of actions that actually had been asserted by the debtor prior to the effective date, which your claim is not. I'm claiming the language that is used, the word that is used is may, or the language I believe is may have been asserted. Clearly that language has some, can be interpreted in different ways. I just would like to say very quickly that the derivative suit is the exact same set of facts that gave rise to the adversary action that's at issue here. All the more reason why you could have been specific. So all this possibility about buried, discovered claims is nonsense in your case because you say it's coming out of it. But I bring you back to the statute. That's what troubles me. It says a claim or interest belongs to the debtor but only to the extent to which the plan provides for the retention of what? Not of categories, of such claim or interest. Now, what do we do with that? Such claim. Yours is not such claim. It's any claim. Judge, I think that that can be interpreted. It could be, but it's not rational. But I think you have to look at it for what benefits the creditors because that's what we're all concerned about. That's what the focus of the plan is, is does it benefit the creditors? Is it fair to the creditors? And that, I think, has to be the touchstone on which you reach your opinion. All right. Let me ask one question if I may. Mr. Besider, I ask opposing counsel, was this possible claim against the law firm lawyer known before the plan was approved? I don't know if the claim against, if that particular claim was known. The appellees in this case represented the debtor and the principals and a number of other entities beginning sometime around 2005 and were very instrumental in facilitating the fraud that is alleged. But did you all know about this? Did anybody, did the creditors know about it? No, sir. In fact, they were represented when the derivative suit was filed. They came in and represented all of the defendants, and they continued to represent the defendants until sometime after post-confirmation. One of the troubling aspects is that they represented the co-manager of the debtor all pre-confirmation and were participants in selecting bankruptcy counsel who crafted the plan which was approved by the co-manager that he represented. All of which was known throughout, right or wrong. Nothing you described is exactly anything other than an open. It may be open and dead wrong. Right. It may not have smelled right, but it was in the open. Yes, sir. Who the lawyers were, you might not have known about the alleged fraud and other claims. The creditors didn't know about it, and it's the creditors that are being asked to vote. I don't want to keep going. We have your case. Thank you very much, Your Honor. That completes the docket for the day and for the week.